FILED
02 SEP 30 PM 2:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 3 0 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DEBBIE DIXON, et al., )
)
    Plaintiffs, )
) CIVIL ACTION NO.
v. )
) 02-AR-1075-M
MARSHALL COUNTY, et al.. )
)
    Defendants. )

**MEMORANDUM OPINION**

    Before the court is a motion filed by defendants Mac Holcomb ("Holcomb"), Chris Brown ("C. Brown"), Tina Brown ("T. Brown"), and Richard Marholz ("Marholz"), to dismiss the amended complaint. Also before the court is a motion filed by defendant, Marshall County ("County"), which is the same entity as defendant "Marshall County Commission". They will be treated as one. Both motions will be partially granted.

    The seven plaintiffs, who are or have been incarcerated in the Marshall County Jail, sue Holcomb, (who is the Sheriff of Marshall County and by virtue of his office is in charge of the jail), C. Brown, (who is warden of the jail), T. Brown, (who is jail administrator), Marholz, (who is a jailer), and County pursuant to 42 U.S.C. § 1983 for alleged violations of the Constitutional rights of the plaintiff detainees. Plaintiffs concede that their official capacity claims against Holcomb, T. Brown, C. Brown, and Marholz are due to be dismissed. Plaintiffs

append state law claims for invasion of privacy, assault and battery, and outrage. The complaint arises out of alleged sexual assaults committed by two other defendants, Jerry Johnson ("Johnson") and Bill Rucker ("Rucker"), who have not filed motions to dismiss, but rather have filed answers. It is they, as jailers, who allegedly committed the sexual assaults for which the other defendants are alleged to be vicariously liable.

The moving individual defendants contend that, as executive officers of the state, they are entitled to absolute sovereign immunity with regard to the plaintiffs' state law claims for invasion of privacy, assault and battery, and outrage. Plaintiffs reply that defendants' conduct falls outside the conduct recognized as immune. A state agent is not immune when he acts willfully, maliciously, fraudulently, in bad faith, beyond his scope of authority, or under a mistaken interpretation of the law. *Ex Parte Cranman*, 792 So.2d 392, 405 (Ala. 2000). Plaintiffs do not set forth any facts to show that these particular defendants acted willfully, maliciously fraudulently, in bad faith, beyond the scope of their authority, or under a mistaken interpretation of the law. As executive officers of the state, Holcomb, C. Brown, T. Brown, and Marholz are immune from suit under Article I, § 14 of the Alabama Constitution of 1901. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1986).

Defendants also contend that the action should be dismissed

2

for lack of subject matter jurisdiction. The Eleventh Amendment bars claims from being made in a federal court against a state or its officials in the absence of state consent. *See Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99-1000 (1984). Plaintiffs point out that they are now suing the defendants only in their individual capacities so that the state itself is not being sued.

Plaintiffs allege that Holcomb, C. Brown, T. Brown, and Marholz failed to properly supervise and/or manage the training and conduct of its law enforcement officers, jailers, and other jail personnel, resulting in a violation of clearly established constitutional law and causing plaintiffs' injuries. Supervisory personnel cannot be held liable under § 1983 for the acts of their subordinates under the doctrine of *respondeat superior, see Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir.1986); this, however, does not preclude an inquiry into whether the supervisors are independently liable under § 1983. "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a *history of widespread abuse* puts the responsible supervisor on

notice of the need to correct the alleged deprivation, and he fails to do so." *Cross v. Alabama Dep't. of Mental Health & Mental Retardation,* 49 F.3d 1490, 1508 (11th Cir.1995) (quoting *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990)); *accord Dean v. Barber,* 951 F.2d 1210, 1215 (11th Cir.1992) ("[A] supervisor may be held liable under section 1983 if the supervisor had personal involvement in the constitutional deprivation or if a sufficient causal connection exists between the supervisor's conduct and the constitutional violation."). The determination of whether a supervisor was deliberately indifferent and whether that indifference was causally related to the constitutional violation is a fact-sensitive inquiry. *See Waldrop v. Evans,* 871 F.2d 1030, 1034 (11th Cir. 1989).

Defendants argue that they are entitled to qualified immunity. Unless plaintiffs' allegations state a claim of a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *See Mitchell v. Forsyth,* 472 U.S. 511 (1985). Defendants argue that the factual allegations in the amended complaint, while now specifically mentioning Holcomb, T. Brown, C. Brown, and Marholz, still do not set forth facts sufficient to show that these defendants in any way participated in the alleged constitutional violation. Defendants further argue that there are no facts which demonstrate in any way why

defendants "knew or should have known" that the conduct of defendants Johnson and Rucker was unlawful and/or occurring in the jail under their supervision.

In this case seven detainees are making numerous allegations that they were sexually assaulted, groped, and molested by jailers. Plaintiffs allege that one of them was confined to the booking room for over twenty-four hours until she was finally compelled to engage in oral sex with jailer defendant Johnson. Plaintiffs allege that Holcomb, T. Brown, C. Brown, and Marholz "knew or should have known" that such conduct was occurring under their supervision. The required causal connection can also be established when a *history of abuse by subordinates* has put a supervisor on notice of the need for improved supervision and training, and his failure to take corrective action sets the stage for the inmate's injury. *See Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir.1985); *Greason v. Kemp* 891 F.2d 829, *836 -837 (C.A.11 (Ga.),1990). It does not now appear "beyond a doubt" that plaintiffs cannot prove a set of facts to support a claim that would entitle them to relief. Plaintiffs will be allowed to pursue discovery in order to determine whether there was a practice of condoning the conduct complained of or a pattern of jail personnel misconduct sufficient to require the Sheriff's department to train and supervise its officers to assure that they enforce proper policies and procedures with

regard to the handling of jail detainees, inmates, and/or others being held within or under the custody or control of jail facilities by its law enforcement officers.

The court concludes, based on the record before it, that Halcomb, C. Brown, T. Brown, and Marholz are not entitled to qualified immunity *at this stage* because the limited record before the court does not support defendants' contention that there is no evidence to establish that these defendants knew that defendant Johnson and defendant Rucker were engaging in the conduct complained of. The court stresses that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings) as more facts are developed. *See Oladeinde v. City of Birmingham* 963 F.2d 1481, *1487 -1487 (11th Cir. 1992).

Defendants point out that the Eighth Amendment does not apply to plaintiffs because they were pretrial detainees. Although plaintiffs attempt to characterize this set of claims as violative of the Eighth Amendment, it is well settled that the guarantees of that constitutional provisions are not available to pretrial detainees. *Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40, 97 S.Ct. 1401, 1412-13 n. 40, 51 L.Ed.2d 711 (1977); *Tittle v. Jefferson County Com'n*, 10 F.3d 1535, 1539 n. 3 (11th Cir.1994). The provisions of the Eighth amendment are relevant as a limitation of the state's power to punish, a power that the

state possesses only after a formal adjudication of guilt against the accused. *Ingraham,* 430 U.S. at 671-672 n. 40, 97 S.Ct. at 1412- 13 n. 40. Rather, the relevant constitutional guideline for pretrial detainees is the due process clause of the Fourteenth Amendment. *See Bozeman v. Orum* 199 F.Supp.2d 1216, *1230 (M.D.Ala.,2002). Thus, plaintiffs' claims insofar as they purport to invoke the Eighth Amendment will be dismissed.

Defendants argue that the Fourth and Fourteenth Amendment claims should be dismissed because plaintiffs "have provided no factual allegations to support a claim of being searched at all let alone 'strip' searched. Plaintiffs allege they were sexually assaulted. These claims are therefore properly analyzed under the Fourteenth Amendment and not the Fourth Amendment . . . Plaintiffs have not alleged facts sufficient to sustain their Fourteenth Amendment claims." All seven plaintiffs make factual allegations that they were instructed and/or interrogated in some way to remove some sort of clothing during the intake or booking procedure. *Black's* Seventh Edition defines search as an "examination of a person's body, property, or other area that the person would reasonably be expected to consider as private, conducted by a law enforcement officer for the purpose of finding evidence of a crime." Plaintiffs point out that most of conduct complained of began with defendant Johnson's conducting an initial search during the booking process by asking a plaintiff

7

about her undergarments and private parts and asking to see her undergarments and private parts.

As already discussed defendants contend that plaintiffs do not allege facts to support their allegation that the defendants did not properly train and supervise the two jailers. While a defendant may be liable for an alleged failure to train, such liability will only be found if the failure to train rises to the level of a policy or custom that is actionable under § 1983. *See Sewell v. Town of Lake Hamilton*, 117 F.3d 488 (11th Cir. 1997). "Where the proper response is obvious to all without training or supervision, then the failure to train or supervise is generally not so likely to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Id.* Defendants argue that the Eleventh Circuit held that a supervisor could not be held liable for failure to train an officer not to sexually assault an arrestee because it is obvious that the officer should have known his actions were wrong. *Id.* They further argue that even if these defendants did fail to train jailers not to sexually assault inmates, such a failure does not constitute deliberate indifference. Unlike the *Sewell* case relied on by defendants, wherein there was only one instance of police misconduct, here there appears some evidence from which a pattern of misconduct may emerge. Furthermore, even where the need to train or

8

supervise would not be obvious to a stranger to the situation, a particular context might make the need for training or supervision so obvious that a failure to do so would constitute deliberate indifference. It could be enough that the jailers so often violated constitutional norms that the need for further training must have been plainly obvious to the Sheriff's policymakers. *See Walker v. City of New York*, 974 F.2d 293. (2nd Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). The motion to dismiss plaintiffs' Fourth and Fourteenth Amendment claims against defendants Holcomb, T. Brown, C. Brown, and Marholz will be denied.

In the alternative, defendants move for a more definite statement. This motion will be denied.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). Plaintiff Allen was incarcerated at the time this suit was filed and she has not alleged that she exhausted two separate administrative remedies available to her through the Marshall County Jail and the State Board of Adjustments. She contends contend that the PLRA does not apply to her claims because her claims are not frivolous. They cite for this proposition *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000), wherein the Eleventh Circuit held that "Congress passed the PLRA

9

to reduce frivolous prisoner lawsuits." Plaintiff also argues that any attempt to exhaust administrative remedies would be futile because she would have been expected to complain to Sheriff Holcomb and Warden Brown, both of whom are defendants in her lawsuit. The court in *Higginbottom* also said that a broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. *Id*. Moreover, the exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile. The plain language of the statute makes exhaustion a precondition to filing an action in federal court. *Id*. at 1261. Defendants' motion to dismiss with respect to plaintiff Allen will be granted and Allen's action against defendants Holcomb, T. Brown, C. Brown, and Marholz will be dismissed in its entirety.

### Defendant Marshall County Commission

County says that this court must dismiss plaintiffs' claims against it because a county cannot be held liable under § 1983 under a *respondeat superior* theory. County contends that it cannot be held liable under a failure to train or supervise theory because it has no authority over the employees of the Sheriff. In *Turquitt v. Jefferson County*, 137 F.3d 1285, 1288-1291 (11th Cir. 1998), the Eleventh Circuit found that a Sheriff

has the sole authority over the hiring, firing, training, supervision, and discipline of his employees and the day-to-day operations of an Alabama jail. Plaintiffs argue that they do not make such a contention and agree with County in that regard. Plaintiffs do allege, however, that County had the duty to adequately fund, erect, and/or maintain the Marshall County Jail facility so as to adequately protect and secure the plaintiffs, but failed to do so.

Plaintiffs are attempting to connect the intentional conduct of the jailers to the some policy or custom of County, which plaintiffs allege constitutes deliberate indifference to their constitutional rights. A county has a duty to construct and to maintain a jail of sufficient size and strength to house the inmates. *See Marsh v. Butler County, Ala.*, 268 F.3d 1014 (11th Cir. 2001); Ala.Code §§ 11-14-10, 11-14-13 (1998). Plaintiffs argue that County constructed and maintained this jail's booking room and elevator in a way that provided a means for wrongful, but foreseeable, jailer misconduct. Specifically, County failed to install surveillance cameras in the booking room and failed to adequately maintain the elevator since the emergency stop button did not work and there was not a camera. In *Keeton v. Fayette County*, 558 So.2d 884 (Ala. 1990), the court held that by using the phrase "maintain a jail" in § 11-14-10 the Legislature intended to require the county commission to keep a jail and all

11

equipment therein in a state of repair and to preserve it from failure or decline.

It is the law of this Circuit that it is an unreasonable response for an official to do nothing when confronted with prison conditions that pose a serious physical harm to inmates. *See LaMarca v. Turner,* 995 F.2d 1526, 1537-38 (11th Cir. 1993). Plaintiffs allege that no action was taken to fix the elevator or to adequately maintain surveillance of the booking room. A local government body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. *City of Canton*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989).

Plaintiffs must, however, demonstrate a causal connection between County's alleged jail design and maintenance shortcomings and plaintiffs' injuries . County contends that plaintiffs have not demonstrated that, through its deliberate conduct, it was the moving force behind the alleged constitutional violations. This court concludes that because a county government that is not responsible for the day to day operations of its jail is not responsible for designing and maintaining the jail so that it is foolproof against the abuse of prisoners by rogue jailers. The relationship between the misuse of a booking room or elevator or the misplacing of surveillance cameras and acts of sexual abuse is too tenuous to allow a fact finder to find proximate

causation. If there were proof of actual notice to County of the alleged problems in the jail, the result might be different, but there is no such showing in this case.

County joins the individual defendants in arguing that the Eighth Amendment does not apply to the plaintiffs because they were pretrial detainees. For the same reasons discussed above, plaintiffs claims against County based on the Eighth Amendment would be dismissed even if their entire claims had not been. Plaintiffs concede that their Fifth and Ninth Amendment claims are due to be dismissed.

### Conclusion

A separate order in accordance with this opinion will be entered.

DONE this 30th day of September, 2002.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE